The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Brian Bilodeau, Appeal No. 19-2292. United States v. MRLLC, Appeal No. 20-1034. And United States v. Tyler Poland et al., Appeal No. 201054. Attorney Drake, please introduce yourself on the record and proceed with your argument. Good morning, Your Honors. Jameisa Drake on behalf of the Bilodeau defendants. With the Court's permission, I would ask for one minute of rebuttal time. Yes, you may. Thank you, Your Honor. I would like to begin, if the Court wishes, with a discussion of the search and seizure issues that are raised in our brief. And among those, to begin with the argument that there was an insufficient nexus established in the search warrant affidavit to search 72 Danville Corner Road, which is my client's home. The government concedes in its brief that it had no direct evidence of Bilodeau conducting drug transactions from the home. The government likewise had no direct or indirect evidence that Bilodeau's home contained marijuana. When the agents searched the home, they were surprised to find that, and they had to apply for a second search warrant to seize it. Now, the district court said that there was probable cause to search Bilodeau's home, because informants discussed there being a safe in the home, and also because Bilodeau had, quote, recently engaged in communications related to marijuana trafficking. Those communications, of course, occurred when Bilodeau was outside the home, leading the government to pivot in its brief on appeal and argue instead that the safe evidence, coupled with the fact that Bilodeau was allegedly a longtime drug dealer, established a sufficient nexus. Ms. Drake, was any of the evidence seized in the search of the home, did any of it play a significant role in the court's determination of denying the request for an injunction? Yes, Your Honor. The alleged ledgers played a very significant role, both in the district court's determination that Bilodeau and the other defendants were non-compliant. These alleged ledgers also play an outsized role in the government's brief and in their argument in support that Bilodeau was non-compliant. Returning back to this nexus piece, what the government is essentially asking this court to do is something that it has previously rejected doing. Ms. Drake, before you go on, just so I don't want to leave that exchange you just had with Judge Kayada, do you agree that the burden was on you to show strict compliance, assuming that's the test? I agree that that is the burden that was assigned by the district court. Accepting that as a premise for the moment, why would the ledgers have been relevant to the question about whether the injunction should be issued unless you had affirmative evidence of strict compliance? I want to answer Your Honor's question and make sure that I understand it, so I will attempt it this way. Assuming the burden was correctly placed on my clients, which of course we contest, it was then incumbent on Mr. Bilodeau to come forward and explain what those documents meant. We, of course, refute the characterization that they were ledgers. That's deeply problematic. First, it requires him to waive his Fifth Amendment right to silence, but secondly, it requires him to preview a trial defense. I guess I'm not making the question quite right. I would have thought what we would do is we look at the indictment and we see is the indictment alleging a prosecution or initiating a prosecution for somebody who is not in strict compliance. Then, if the burden is on you to show strict compliance to stop the prosecution from going forward, you'd have to put affirmative evidence that the prosecution is targeting somebody who's in strict compliance. Forget the ledgers for a second. What's the affirmative evidence of your strict compliance? I see. Well, as the district court acknowledged, what Bilodeau suggested he wanted to do was to be able to connect the marijuana that was grown at a particular warehouse to the marijuana that was ultimately seized from his home. Time has expired. If I may. Yes, you may finish. But he was unable to do that, and his MMMP compliance expert acknowledged that, because the plants at the warehouse were destroyed. Yeah, but just one last question. Did he have any evidence that any customer tied to any of it was a legitimate customer? Again, answering that question requires Bilodeau to tip his hand and put on, you know, to explain evidence that would have been admissible at trial. What he did, what he was forced to do, by virtue of sort of the conundrum that the burden allocation placed on him, was to receive the testimony that came in from the government's witnesses and respond to it as best he could. For all of the reasons we set forth in our brief, however, he should not have been in that position, and the burden should have squarely fallen to the government. Thank you. Thank you, Ms. Drake. Thank you, Attorney Drake. You can mute your audio and video at this time. Attorney Frawley, if you could unmute your audio and video and introduce yourself on the record, please. Good morning, Your Honors. Al Frawley for Appellant MR, LLC. With the Court's permission, I'd also like to reserve one minute for rebuttal. Yes, you may. Your Honors, the question below was vague. It was whether MR had established its strict compliance with state law. The parties couldn't even agree on what state law applied. The legal standard was equally as vague. Judge Singal said that the outcome here does not depend on the precise limits of strict compliance. Nevertheless, MR had the burden of persuasion to overcome an inference of noncompliance and establish a likelihood that it lacked any interest in allegedly noncompliant aspects of marijuana production and distribution. The facts that were presented should have carried that burden, which was MR had no involvement at all in the cultivation or distribution of marijuana grown at 230 Merrill Road. The only affirmative evidence MR could have put on to prove that was the marijuana itself. It could have showed that the correct number of plants, correct heights, correct weights were all present. However, that evidence was destroyed. How is MR supposed to carry its burden of proof when the only affirmative evidence it could have put on was destroyed? It couldn't have showed any patient cards because it wasn't growing marijuana. It couldn't show any sales tax information because it wasn't selling marijuana. Nevertheless, the outcome was that MR had not proved it acted in strict compliance with state law based on the noncompliant conduct of others. And that was conduct MR under state law was forbidden from observing and had no ability to investigate due to confidentiality reasons. In other words, the district court's burden was essentially impossible. How is an innocent landowner supposed to carry its burden to show that it complied with a law that it had no duty to comply with and show that noncompliant conduct that appeared facially compliant was, in fact, it was not involved in? Why was evidence that the company was not involved in the production or distribution of marijuana enough to show that it strictly complied with its duties? At what point does an individual or entity with no involvement in the cultivation or distribution of marijuana become noncompliant based on the acts of others? Mr. Frawley, you seem to be saying that, forget about the marijuana amendment and the like, you seem to be saying your client didn't have anything to do with the marijuana period, so MR is innocent. Correct. What I'm saying is MR owned a warehouse. It knew registered caregivers were growing in that warehouse, but it was not growing the marijuana itself. It was not selling the marijuana itself. So how can it be forced to prove that it strictly complied with a law that it wasn't operating under in the first place? I mean, the fact that there was no evidence that was involved in the cultivation or distribution should mean the government cannot prosecute it because MR is in strict compliance by renting space to a caregiver without discrimination. That was the only duty it had. I mean, MR is really no different position than any other individual entity who receives payments as a result of a marijuana sale that ultimately turns out to be noncompliant. And if you think about it, the person that sells the fertilizer to the person growing marijuana, are they now part of the chain if that marijuana is ultimately sold without its knowledge outside of compliance? It's the electric company that's profiting off the utilities it provides to the building, noncompliant because it's paid with the proceeds of sales that it doesn't know ultimately turned out to be noncompliant. And the point of the matter is there was nothing that MR actually did that failed to strictly comply with the law. All it did was own a building where registered caregivers were growing marijuana. Any noncompliant conduct happened well outside that facility. Just to answer Judge Kato's question, could you explain what is the law authorizing and relating to medical marijuana that your client is in strict compliance with that this prosecution impedes the implementation of? Since you're invoking that statute to stop the prosecution, you're not claiming that it's an indictment that has to be dismissed because it doesn't state a crime and you're not defending yourself and asking for an acquittal. You're trying to stop the prosecution to begin with by invoking that statute. So you have to tie the claim for the injunction to that statute. So what is the thing you're in strict compliance with that this prosecution impedes the implementation of? Okay, so the thing that my client was in strict compliance with was the medical marijuana program that says a building owner cannot refuse to rent space to a registered marijuana caregiver. So when someone comes to my client and says, I want to grow marijuana there, I cannot refuse to rent him that space just because he wants to grow marijuana there. And as I understand it, they're alleging that that's not what he's being prosecuted for. They're alleging that he knew that there was non-compliant conduct going on, but there was no evidence of any non-compliant conduct at the facility. It expired. But that seems like a different argument than an argument that the statute should stand as a bar to the prosecution. That's an argument that even though the statute's not impeding the implementation of any main law about medical marijuana, the thing that they're saying is out of compliance, you're saying there's no evidence of. That just seems like a different kind of contention. Well, Your Honor, if I may, the statute also forbid my client from investigating, from going into these rooms, from looking into the patient cards, looking into the sales because of confidentiality. So if the government is claiming my client knew that this stuff was non-compliant, my client by definition could not have figured it out if it was in strict compliance with the law. Any more questions for Mr. Frawley? Thank you, Mr. Frawley. Thank you. At this time, Mr. Frawley, please mute your audio and video. And Mr. Hallett, please introduce yourself on the record. Yes. Thomas Hallett on behalf of the Poland defendants. Judges, may it please the court. I too would like to reserve one minute for rebuttal, Judge Kayada, if that's permissible. Yes, you may. Thank you. Our position is somewhat different than the other defendants in this case. And we're attacking the main marijuana use, main medical use of marijuana act on its face, contending that the regulations are not in fact regulations, but merely advisory guidelines. And therefore they can not be out of compliance under a strict compliance standard. The reason for that is because section 10 of 10, 144 codomain rules is the enforcement section. And there simply is no enforcement provided under that section of any of the rules set forth in rules one through nine and rule 11 of what I'll refer to as the MMMP. Without an enforcement mechanism, they can not be a regulatory scheme. Now with that said, there are several rules, which in fact are enforced under the enforcement section. Those rules do not apply in this situation. Basically the statute as written or the rules as written, leave the growing of marijuana, the possession of marijuana, the manufacturing and sale of marijuana wide open. It simply doesn't address any of those factors. If you are a licensed caregiver under the MMMP, which all of the individuals in this case were, and it was clear that they were growing under the MMMP, we had an expert that testified to strict compliance with the MMMP, then they are protected. And the judge should have enjoined further prosecution. Now this includes, and I understand this is a difficult concept in a way, it includes trafficking of marijuana that is grown as medical marijuana and then sold to non-patients. Why is that? Because the only activity that is precluded by the main medical marijuana program is if you've been convicted of selling marijuana. You seem to be reading the words medical marijuana in the federal statute, the Warbarker-Ryder, as if it just tracks the label that a state gives to medical marijuana. That may be true, but what I'm really referring to... What is your support for that? Because that would suggest that if a state passed a statute called the Medical Marijuana Act that legalized all marijuana, then the Warbarker Amendment would forbid all prosecutions of anybody in that state dealing in marijuana, even if it had nothing to do with patients at all. Well, the Warbarker Amendment, as I read it, has to do with possession, distribution, manufacturing, etc. Those are the four areas that are addressed. Of medical marijuana. Yes. So what I'm saying is, you're suggesting to us that a state can define medical marijuana to mean anything. I believe that a state can define medical marijuana to be what it determines it to be. Yes. It has that right to do so. And I don't think that the Warbarker-Farr Amendment precludes that in any way. In any event, Maine chose... Judge Kanata? Well, I don't want to repeat your question, Judge Kanata, but I'd like to hear the answer to that. Well, suppose Maine included heroin in the definition of medical marijuana? That, I imagine, would not be permissible. Isn't that because we would look to the federal enactment to determine what medical marijuana is? We wouldn't let every state define it every which way they wanted to. But the federal enactment does not address specifically how the states will determine what medical marijuana is. So I think it leaves to the state a good deal of leeway with respect to how they classify marijuana as medical. And in this case, they classified it as people getting medical marijuana cards, cardholders who then grew medical marijuana, distributed it to patients or otherwise. The enforcement mechanism only deals with... only controls or regulates those specific areas set forth in Section 10 pertaining to cardholders. And of note, when it deals with dispensaries, every violation under the rules is included as a potential violation subject to sanction. For cardholders, patients and cardholders, it does not include that language. There is no such thing as a violation of the rules. So the only things that are potentially governed with respect to sale of marijuana is if you've been convicted of sale of marijuana. You still fall within the rubric of the medical marijuana statute and coverage as long as you have not been convicted of selling marijuana. Thank you. Are there any more questions for Mr. Hallett? Thank you. Thank you. Mr. Hallett, at this time, please mute your audio and your video. And Attorney Block, if you could unmute your device at this time. And introduce yourself on the record. Good morning, Your Honors. Benjamin Block on behalf of the United States. If I could pick up where Mr. Hallett left off, the argument that the Poland defendants are making today and that they made in their reply brief is dramatically different than the one that they made in their opening brief. In their opening brief, the Poland defendants called the MMMP a complex set of regulations that addresses all aspects of medical marijuana cultivation, processing, and consumption. It, quote, regulates everything, end quote, from fence site to quality control to use of marijuana in hospice and nursing homes. In their reply brief, they refer to it as a, quote, freewheeling industry. These are very different interpretations of the MMMP. And I think it points to the problematic nature of any standard other than the strict compliance standard when evaluating conduct and whether a prosecution would be precluded under the Gorbachev Amendment. Why do we even need to discuss strict compliance? As I understand the record, there were roughly 5,000 pounds a year of marijuana being produced and there isn't any evidence that any of it went to a qualifying patient. That's correct, Your Honor. I don't think I need a definition of strictness, do I, to say much about whether that is furthering Maine's stated statutory purpose here. You do not. And the government's position is that under any standard, the conduct demonstrated in the compliance hearing was so far out of bounds that the Gorbachev Amendment does not apply. Could you just address the revocation point under Maine law? That's the one. Because I think there's two things going on that are confusing me. As I understand it, all of these people had been licensed, correct? Or at least some of them? Yes, Tim Belmore was... And none of them had had revocation orders, correct? That is correct. And under Maine law, at least with respect to certain things, the revocation is dependent on there being a conviction. Correct. Okay, so at least in that sense, one might say, if you were continuing to operate pursuant to the license, you were in compliance with Maine law until it's revoked. Nonetheless, if there is no indication that they're dealing with medical marijuana, then it seems hard to see how the Rohrabacher Amendment stops the prosecution. So I wonder if whether the issue here is not what the strict compliance test is, but what does medical marijuana mean in the Rohrabacher Amendment? Well, I would say two things. First, I would say that the MNMP specifically states that the protections of the statute and the regulations only apply to conduct that is, quote, expressly authorized by statute and regulation. But isn't any... Is the conduct... What about the conduct here, if it's done by a license holder, is not expressly authorized? There's lots that's not expressly authorized, and whether or not that unauthorized conduct, such as distribution out of state, distribution to non-patients, use of non-registered employees, none of that is expressly authorized by the statute and the rules and therefore not protected by the program. The fact that the state has different procedural mechanisms for revocation and intermediate remediating steps that it might take prior to revocation. So your idea is no licensee is authorized to do this, regardless of whether they remain a licensee. The license just entitles them to do the things they can do under the license. Correct. So your position apparently is that it's not necessary to this case to decide whether the standard is strict compliance, substantial compliance, plain compliance, but that can be ignored for now because... Why? Because by any of those standards, the conduct here was outside the bounds of what would be protected under the Boerbacher Amendment. Now, certainly there is some benefit to future litigants for the court to review the law and determine a standard, but it's not necessary to affirm the decision of the district court below. Mr. Brock, just on that point, is the reason for that, I'm just trying to figure out what evidence is lacking here on the part of the defendants. Is it that they have no evidence of there being any legitimate patient? What is the evidence that renders their conduct plainly non-compliant? Or not expressly authorized. Not expressly authorized. Certainly, with respect to Poland, the ledgers retrieved from his marijuana facility indicate large quantities of out-of-state marijuana. That suggests that lots of the conduct is not expressed. You're saying none of it is. And is that because they have no evidence of any patient being legitimate? Suppose they had evidence of 10 legitimate patients and then all the marijuana is destroyed and there's evidence that 90 of the patients were illegitimate. That would raise a different question than if they have no patients who are legitimate. Correct. There's no evidence of legitimate patients here. There's no evidence that the marijuana that was being grown was distributed for medicinal purposes. Do we have a finding by the district court on that point? The district court, yes. The district court said, and I would have to go back to his order to find the specific quote, but it said that there was no evidence that the marijuana at issue here was for medical purposes. Or was distributed for medical purposes to qualifying patients. Doesn't your argument just come down to saying that growing and selling marijuana distributed randomly on street corners to anybody who wants it in Massachusetts is not medical marijuana within the meaning of either the Rohrbach Amendment or the main statute? Yes. That does not comport with the statute. Well, that's not quite the argument you made to the district court, though, because you were focused on the strict compliance point, which does seem like a different point than whether, regardless of how it tracks main law, under the federal definition of medical marijuana implicit in the Rohrbach Amendment, this simply isn't that. Well, the Rohrbach Amendment links itself to... Put it this way. Take two different cases. One, you're going after somebody who's selling heroin. We wouldn't look at a strict compliance. We would just say that's not medical marijuana you lose. The Rohrbach Amendment's no bar to the prosecution. Case two, they're clearly dealing in medical marijuana, but they're not in strict compliance with the state rules about how you sell it. In that case, the question then becomes, does the Rohrbach Amendment benefit? Those are two very different cases. This case is arguably like the first case, but as I understand the arguments you've made, they're exclusively treating it as if it's like the second case. Yes, so let me make sure I understand you. So, for example, if the defendants here were accused of growing and distributing to licensed patients more marijuana than the main medical marijuana statute would allow them to sell, versus they're not distributing to medical marijuana patients in the first place, this isn't marijuana. Correct. Yes, I don't think that... I don't think we didn't make that argument to the court. I think we just made it in the context of this conduct. The defendants invoked the Rohrbach Amendment. We responded to that invocation and demonstrated that none of this... The last question, which is just a little bit tricky, is what is the definition of medical marijuana the government's operating on under the Rohrbach Amendment since it doesn't define it? I think we are tethered to the state definition of medical marijuana. You're not if they define it to mean heroin. No, there are limits to... So that's what I'm trying to figure out. What if we were to decide it on the ground that this is not sale of medical marijuana, therefore don't have to get into all the issues about strict compliance in construing the main rules? That would require us to have some definition under the federal statute of what is medical marijuana, and so I'm just asking what's the government's view of what that definition is. I think you simply look to the plain language of the Rohrbach Amendment and general understandings and definitions of medical marijuana, which would be marijuana used for medical purposes and distributed... Five minutes remaining. You may want to address the other two arguments, the search and seizure of the house and an argument's been made that MR just... All they did was lease it as they were required to under main law, and why are they being prosecuted? Yes, thank you. Let me address the MR point first, and what I would say about that is MR is a single shareholder company, and that single shareholder is Kevin Dean, and therefore Kevin Dean's conduct on behalf of MR is imputable to the company, and in their reply brief, MR concedes that the evidence supported an inference that they were participants in a profit-sharing marijuana enterprise. They tried to argue that there was no evidence that it was an illegal marijuana profit-sharing enterprise, but there is no such thing as a legal marijuana profit-sharing enterprise under the MMMP. Collectives are prohibited, and Kevin Dean's knowledge, which was shown through the notes found in, among other things, through the notes found in Bilodeau's residence of payments, profit-sharing payments to Kevin Dean, support an inference that those... that MR was aware that this was an illegal profit-sharing enterprise, and they presented no evidence of themselves as a mere landlord through typical means such as rent payments from tenants. They rented space to the caregivers. They didn't receive any rent. Landlords aren't typically paid in profit-sharing, a profit-sharing enterprise is a partnership. So that's what I would say about their... their knowledge. It's imputed from Kevin Dean in his capacity as their sole shareholder. That seems to get back towards the strict compliance test. Now, suppose the tenant here was running a legit medical marijuana operation, but then the landlord entered into a profit-sharing. As I understand it, that's prohibited under the law, so you wouldn't have strict compliance with the law, but this would be having to do with medical marijuana. Yes. So do you have... is there evidence you could point us to that he knew not... he was not only profit-sharing, but he knew that this was for not medical marijuana, it wasn't going to patients. There was testimony from Brandon Knutson that Bilodeau and Dean functioned as partners both at the KCI facility at 230 Merrill Road and at the Cascade facility at 586 Lewiston Junction Road, and so... and that Dean acted as... if he's acting as a partner with Bilodeau and he's sharing profits from marijuana, that's for a caregiver such as himself. He's plainly aware that he is not allowed to share grows and share profits for medical marijuana purposes. For purposes of what you want us to rule here, do you... is the indictment seeking to prosecute him regardless of whether it was medical marijuana or not? Yes, we would be seeking to prosecute MR regardless of whether this is considered medical marijuana because if it's not medical marijuana, then MR is profiting as a corporate partner in a marijuana trafficking operation that violates the controlled substance. I guess what I'm saying is, if we were to rule that no injunction lies because this is not medical marijuana, would that be a problematic ruling from the government's perspective because it would leave open the possibility that the prosecution could be enjoined insofar as it was medical marijuana or does that just come up at a later stage? In other words, are you seeking to prosecute them because there's no evidence that there's medical marijuana involved and it's on that ground or even if they can show it's medical marijuana, you're trying to go forward it? I don't quite know how we're supposed to think about the indictment. I realize you're saying either way you should be able to prosecute because you're either not in strict compliance or it's not medical marijuana. But in terms of how the prosecution would unfold, it might be different depending on whether we reject the injunction on one ground or the other. I think, are you referring to specifically MR or to all defendants at this point? I think it may be all. I'm not sure of the details. It's a little hard because the case is framed relatively abstractly as opposed to with respect to particular accounts and particular allegations. Right. With respect to the marijuana accounts that are charged, regardless of whether the injunction does not lie because it is not medical marijuana or because they were not in strict compliance with the MNMP, at trial, the evidence will simply pertain to whether or not they possessed and distributed marijuana under the CSA. And so I think at trial this all washes out and perhaps they will attempt to present a public authority defense and it's not clear whether that would be admissible. But whether either of those reasons. That's what I'm saying. That suggests to me that the prosecution you're trying to see is a prosecution that could go forward only if you could show that there's not strict compliance. I don't believe so. If it's not medical marijuana, then we are entitled to prosecute under this. Since this prosecution isn't trying to limit itself only to that type of prosecution, don't we have to decide this injunction on the theory that it's seeking the broader ambit of conduct to be prosecuted? I'm afraid I don't understand the distinction that you're trying to draw. I think the concern is you can't do, even unintentionally, a bait and switch where you defeat the injunction because it's not medical marijuana because it's not going to patients. But then you put on a case at trial which doesn't deal with whether it's medical marijuana or not. You're prosecuting it even if it is. There'd be a mismatch there. I see. It would present the question of whether it's strict compliance if that's what the standard is. The Controlled Substances Act continues to prohibit any and all marijuana distribution. The Rohrbacher Amendment carves out a very limited safe harbor for defendants who are engaging in conduct that is expressly authorized by the states for the distribution of medical marijuana. Once we pass this preliminary proceeding, whether the government's theory is that it is a violation of the medical marijuana provisions under main law or whether it is not part of the medical marijuana... Does that mean your strict compliance test is really an expressly authorized test? Yes. I think that's consistent with what the Ninth Circuit decided in McIntosh. That standard has been applied not only by Ninth Circuit District Courts but also Third and Sixth Circuit District Courts without difficulty. And so, yes, when defendants engage in conduct that is not expressly authorized, they're not strictly compliant. And then if you might give 30 seconds to explaining why the search warrant we should not order that suppressed, the results of the search. Well, you should not order it suppressed because there was ample probable cause set forth in the affidavit to support a search of Bilodeau's residence. The affidavit detailed not only the use of the medical marijuana program as a facade to engage in black market marijuana trafficking, but it showed... It indicated that Bilodeau was a partner with Tim Belmore that the organization used corporations and sophisticated means of money laundering to protect their profits. And the warrant for Bilodeau's residence, the first one, was for documents, was for tax records, business records, other financial records and records of marijuana trafficking that are consistent with the money laundering offenses that were alleged and the marijuana trafficking offenses that were alleged. It is... There was certainly probable cause to believe that he would have financial records relating to his incredibly expensive vehicles that he owned with respect to other businesses that he might be using to launder money, his personal tax records. And so on that basis alone, there was probable cause to search his residence. Thank you. Any more questions for Mr. Block? Thank you. Thank you. Attorney Block, you may mute your device at this time. And Attorney Drake, if you would please unmute your device. Introduce yourself on the record. You have one minute of rebuttal. Jameisa Drake, on behalf of the Bilodeau defendants. This exchange just now with the government is exactly why this court is right to be concerned about, as Judge Cayotta put it, a bait-and-switch. In the search warrant affidavit presented to the magistrate, the government's theory is that this is black market marijuana, leaving aside the material information that my client was a licensed caregiver and that one of his growth sites was recently inspected by the Maine Sheriff's Association and found to be in compliance. This bleeds into, I think, I have now a better understanding of Judge Barron's question, based on your exchange with Mr. Frally. What is the evidence of compliance? Well, the evidence of compliance is that he was a licensed caregiver, that his growth site was found to be in compliance. And whether this is a strict compliance standard matters. Could you just address the expressly authorized point, then? Yes. We set out the text of the Rohrabacher-Farr Amendment on page 4 of our blue brief. The government reads into that the word express, as in expressly authorized. That language doesn't appear there. According to the amendment, this court is to determine compliance by reference to state laws that authorize the use, distribution, possession, etc., of medical marijuana. Marijuana. This goes to Judge Keada's point about what about heroin. By now, we can all recognize marijuana is a legal term of art. It is a plant. There are parts of it that the law cares about, parts of it that the law does not care about. Now, as we explain in our reply brief, what does it mean to be a law? What is the state's law? Well, the strict compliance standard, again, as we explain in our reply brief, is limited to, and this is the argument the government is pressing, simply the text of the MMMP. As we point out, the law has to be much broader. This is Poland's argument. It has to be determined by reference to the way in which the state actually administers. If I may finish the sentence. Please finish the sentence, yes. The way in which the state actually administers its program. And here, that matters. Bilodeau was found noncompliant because of an outdoor grow. The Maine Sheriff's Association said that this outdoor grow did not render it noncompliant. For all of the reasons set forth in our brief, including many in which we didn't get a chance to address today, we urge this court to reverse the court's denial of injunction and its denial of order refusing to suppress evidence. Thank you. Thank you, Ms. Dray. Thank you, Attorney Drake. Please mute your audio and video at this time. Attorney Frawley, if you could unmute your device and introduce yourself on the record. You have one minute of rebuttal. Thank you, Al Frawley for MRLC. District Court acknowledged the question was whether MR, not Kevin Dean, was in strict compliance with the law. The location where Mr. Dean and Mr. Bilodeau were growing was a separate facility that was deemed compliant. MR had no ownership of that facility. Mr. Dean could also, as the sole member of MR, receive payments from caregivers at 230 Merritt Road. There was nothing in the statute that said he couldn't receive rent payments or that these payments couldn't be based on some percentage of the profit. The point that the court seems to be focusing on is, was this medical marijuana for MR's purposes? It was absolutely medical marijuana because it was grown by licensed caregivers. The Maine statute says you cannot refuse to rent to licensed caregivers. Is MR charged with Dean's knowledge? MR's sole member is Mr. Dean, so that would be the only way it could be charged. But the fact is Mr. Dean's knowledge, and knowledge that could be imputed to him, was at a separate facility that the state of Maine said complied with the law. So that's MR's only knowledge. Suppose Dean knew that the marijuana was all going to people who weren't patients? Suppose he knew that. For his purposes, he can't possibly know that because the Maine Medical Marijuana Program says you can't investigate that. All you have a duty to do is rent to registered caregivers, which these were, and after that you can't be involved at all in the process. And that's exactly what the evidence showed, that MR was not involved at all in the process at 230 Merritt Road. While evidence might have showed that Mr. Dean was involved with Mr. Villadoy Cascades, the state of Maine inspected that facility and said that it was in compliance. There's no evidence that MR was selling any marijuana. There's no evidence that, you know, he grew any marijuana. There's just, it was always medical marijuana from MR's perspective, and the statute commanded that it rent to registered caregivers. Thank you. Thank you, Mr. Frawley. Mr. Frawley should mute at this time. Attorney Hallett, if you could unmute and you have one minute, please introduce yourself on the record. Tom Hallett, Poland Defendants. I would just like to address briefly the terms medical and marijuana. As Ms. Drake just indicated, marijuana is pretty generally accepted. We understand what that term means generally. Medical is a very broad term. I think that the Rohrbacher-Farr Amendment left it up to the states to make determinations to what is medical marijuana and what is not medical. If you think about painkillers, for example, aspirin readily available over the counter. Oxycontin, pretty heavily guarded in these days. So they're both medicines. There are many other examples of that. Marijuana can be considered medical for any number of different treatments. So I think that it's such an amorphous term that the states get to define it as they define medical. I'd also like to address briefly the issue of whether there was evidence introduced that there were, in fact, real patients for the marijuana that was being grown at 249 Merrill Road. The expert witness that testified testified that she located outside of each and every room all of the documentation necessary, including patients' names, patients' addresses, and all of the information necessary for patients to be provided with that marijuana, as well as dates of provision. Time has expired. If I might just finish? Yes, you may. The court did not make a finding that there were no valid patients for the medical marijuana grown at Merrill Road. Thank you. Thank you, Mr. Hallett. That concludes the argument in this case. Attorney Drake, Attorney Frawley, Attorney Hallett, and Attorney Block, you should disconnect from the hearing at this time.